IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 22-CR-222 (1) (NEB/TNL) |
| v. | **DEFENDANT ALISHIRE'S MOTION TO MODIFY CONDITIONS OF RELEASE** |
| Liban Yasin Alishire (1), | |
| Defendant. | |

Defendant Liban Yasin Alishire respectfully moves this Court for an order modifying his terms of release to allow him to temporarily leave the State of Minnesota and the United States on or about November 4, 2023 to travel to Kenya. He will return no later than sixty days after his departure, meaning on or about January 3, 2023. The bases for this motion are as follows:

1. Mr. Alishire and two co-defendants were indicted by the United States Grand Jury on September 13, 2022 on allegations of wire fraud and money laundering. (*See* Indictment, (Sept. 13, 2022) [ECF No. 1].)

2. He promptly accepted responsibility and came clean to the Government regarding his involvement. On January 24, 2023, Mr. Alishire pleaded guilty to Count 1 (conspiracy to commit wire fraud) and Count 19 (money laundering) of the Indictment. (*See* Change of Plea Hearing Minutes [ECF No. 69]; *see also* Plea Agreement and Sentencing Stipulations (hereinafter, the "Plea Agreement") (Jan. 24, 2023) [ECF. No. 70].)

3. Mr. Alishire is awaiting sentencing, which has not yet been scheduled.

4. Mr. Alishire will owe $712,084.00 in restitution as part of the Plea Agreement. (*See* Plea Agreement ¶¶ 12, 14.)

5. In the Plea Agreement, Mr. Alishire agreed to forfeit two parcels of real property in Kenya that Mr. Alishire owns (collectively the "Kenyan Real Properties"). (*See id.* ¶ 14.) One parcel is located in the city of Nairobi, Kenya, and consists of an apartment unit. The other is located Kwale County, Kenya, and consists of several rental units on the Indian Ocean. (*Id.*) The value of the forfeited property will be applied against Mr. Alishire's restitution obligations. (*Id.*)

6. Through the process of investing in and managing the Kenyan Real Properties, Mr. Alishire has developed a high level of understanding of the Kenyan real estate market generally and the properties involved specifically. This familiarity—coupled with the fact that Mr. Alishire will be viewed by those involved with the sales as one of their own—will better position him to sell the Kenyan Real Properties for their maximum value. If instead the Kenyan Real Properties are forfeited to the United States and thereafter sold, it is likely that the individuals involved in those negotiations and decisions effecting the sale the properties would be less knowledgeable regarding the Kenyan real estate market generally and Kenyan Real Properties specifically. As a consequence, it is much more likely that the United States would receive a lesser amount for the Kenyan Real Properties than would Mr. Alishire.

7. Since the proceeds of the sale—whether negotiated by Mr. Alishire or by the Government—will be applied against Mr. Alishire's restitution obligation, he has an interest in obtaining as large a sale price for the Kenyan Real Properties as is possible. At the very least, Mr. Alishire should have the first opportunity to do so.

8. Mr. Alishire voiced his concern about this consequential decision from the outset. Shortly following his entry into the Plea Agreement in January 2023, Mr. Alishire communicated, through counsel, his view to the Government that he would be better equipped to sell the properties. He inquired whether, as a result, the Government would permit him to sell the Kenyan Real Properties and remit the proceeds to the Government rather than forfeiting the properties directly. (*See* Declaration of Matthew Forsgren (the "Forsgren Decl.") ¶ 2, (September 27, 2023).

9. Counsel for the Government did not oppose the concept, and stated that they would confer with officials at the Department of Justice regarding the possibility. (Forsgren Decl. ¶ 3.)

10. More than six months have passed since these initial conversations. The undersigned has conferred with counsel for the Government on several occasions in the intervening months, including most recently in late July. On each occasion, the Government did not express opposition to Mr. Alishire selling the Kenyan Real Property himself, but that their conversations with the Department of Justice on the subject remained ongoing. (Forsgren Decl. ¶¶ 4–5.)

11. Mr. Alishire is uncertain as to the reason for the delay in his receiving this approval. He does not in any way doubt the representations of Government counsel that the conversations are being had and that the process is ongoing. However, regardless of its cause, the delay risks substantial prejudice to Mr. Alishire's ability to make the required restitution payments.

12. The exchange rate between the Kenyan Shilling and the US Dollar has deteriorated considerably in the interim. On January 24, 2023, the date that Mr. Alishire entered into the Plea Agreement and shortly preceding his request to be able to sell the Kenyan Real Properties, one Kenyan Shilling was convertible into 0.80 cents. Today, the one Kenyan Shilling is equivalent to 0.68 cents. As a result, the value of the sale proceeds for the Kenyan Real Properties has fallen by 15% in dollar terms owing to currency fluctuations alone.

13. Based on the steady slide in the value of the Kenyan Shilling relative to the US Dollar over the last few years, Mr. Alishire expects that continued delays are likely to further diminish the proceeds which will be available to be applied against his restitution obligations.

14. As a result, Mr. Alishire would like to sell the Kenyan Real Properties expeditiously. He has taken preparatory steps in advance of receiving the Government's approval, including hiring a Kenyan realtor and having the properties advertised, in order to allow him to promptly sell the properties upon receiving the approval.

15. Prospective buyers have informed Mr. Alishire that they are aware of media reporting regarding his criminal case and further that they are aware that the properties are involved. They have further informed Mr. Alishire that they have concerns about the legal status of the Kenyan Real Properties due to the forfeiture obligations, and that they are unwilling to purchase the properties without further guarantees including certain notarized statements from Mr. Alishire that he is unable to provide remotely.

16. Acting through his representatives in Kenya, Mr. Alishire has attempted to assuage these concerns, but has been unsuccessful.

17. Without the ability to reassure potential buyers in person, prospective buyers will continue to be unwilling to purchase the Kenyan Real Properties. If Mr. Alishire is able to travel to the properties himself with the permission of the U.S. Government, it is likely that he will be able not only to sell the properties, but to sell them for a greater sum that the Government would be able to. This would be in the interests of Mr. Alishire due to its effect on his restitution obligations, but is also in the interest of the United States, as it would solidify Mr. Alishire's ability to make those restitution payments in a timely manner.

18. Mr. Alishire believes that he would need several weeks in each of the two locations where his properties are situated, Nairobi and Kwale County, in order to complete the sales of those properties. He therefore requests that he be permitted to travel to Kenya for a sixty-day period in order to make both of the sales.

19. Mr. Alishire is not a flight risk. The Pretrial Services Report prepared shortly after his arrest placed him in pre-trial risk assessment category 2, which predicts a 3% chance of failing to appear. He pleaded guilty and has been under supervised release for nearly a year. Moreover, Kenya has an extradition treaty with the United States.

20. If Mr. Alishire had any intention of attempting to evade accountability for his conduct, he would not have promptly and expressly taken responsibility in the manner that he has. He came clean, presented himself to the Government, and was an open book. He did this almost immediately after the Indictment was issued. He pleaded guilty shortly thereafter. He has taken responsibility for his conduct and will continue to do so. It would make no sense for him to have done any of this if he intended, a year later, to make a hare-brained and futile attempt to flee.

21. Mr. Alishire has built and will continue to build his life here in Minnesota. His businesses are located here. His wife and family are here.[1] He is looking forward to raising his two young children, in both of whose lives he is actively engaged and who are precious to him. He is not going to abandon them, and spend the rest of his life on-the-run and without his wife, children, and livelihood.

---

[1] It is the case that Mr. Alishire's six-year-old daughter, who ordinarily lives with his ex-wife in St. Paul, MN, is currently visiting family in Uganda, which borders Kenya, and is intending to remain in Uganda for some time. That travel is not related to Mr. Alishire's requested trip.

6

22. Rather, he simply wishes to dispose of his Kenyan Real Properties in a manner that will best situate him to satisfy the restitution payments he will need to make. He has tried to lay the groundwork for this remotely, but prospective buyers of the properties have expressed unwillingness to complete the transaction in the absence of Mr. Alishire's in-person assurances. He wishes to attend to those concerns in order to best dispose of his affairs prior to his sentencing, and respectfully requests permission to do so.

23. Because of the expense of an international flight, Mr. Alishire has not purchased flights or lodgings in advance of making this motion, and accordingly does not have a precise itinerary booked. Should approval of the trip be granted, Mr. Alishire would of course provide all details of his itinerary and lodgings with the U.S. Probation Office, and would check in during the trip with that office to the extent to the extent they desire.

24. Mr. Alishire's passport is currently being held by the U.S. Probation Office, and he would respectfully request that they relinquish it to him for the duration of the travel. He will return it within 48 hours of his return to Minnesota.

WHEREFORE, Defendant Alishire respectfully requests permission to travel to Nairobi, Kenya and Kwale County, Kenya, on or around November 4, 2023 for a period of sixty days, and asks that the U.S. Probation Office return his passport to him for this purpose. He further requests that he be permitted to sell the Kenyan Real Property and to forfeit the proceeds to the Government.

Dated:  September 27, 2023     **FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**

*s/ Matthew D. Forsgren*
Matthew D. Forsgren, Reg. No. 0246694
David J. Wallace-Jackson, Reg. No. 0288767
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
mforsgren@forsgrenfisher.com
dwallace-jackson@forsgrenfisher.com
cfisher@forsgrenfisher.com

*Attorneys for Defendant Liban Yasin Alishire*