UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-222(3) (NEB/DTS)

UNITED STATES OF AMERICA,

           Plaintiff,                  **PLEA AGREEMENT AND**
                                                 **SENTENCING STIPULATIONS**

v.

KHADAR JIGRE ADAN,

           Defendant.

The United States of America and defendant KHADAR JIGRE ADAN (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with theft of government property, in violation of 18 U.S.C. § 641. The defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the United States will move to dismiss the counts in the Indictment pending against defendant Adan.

2.    **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count One of the Information. In pleading guilty, the defendant admits the

1

following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

Defendant Khadar Jigre Adan was the owner of the JigJiga business center in Minneapolis. As the owner of the building, Adan rented to several businesses and also had an ownership interest in several of those businesses. One such organization, which Adan had a part ownership interest in, was Lake Street Kitchen. Lake Street Kitchen was owned and operated by Adan and his co-defendants, Liban Alishire and Ahmed Ali.

In late 2020, Liban Alishire enrolled Lake Street Kitchen as a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. Lake Street Kitchen was used by Feeding our Future and co-defendant Liban Alishire to misappropriate and steal Federal Child Nutrition Program funds. Lake Street Kitchen was used by Alishire and others as a site purportedly providing meals to underprivileged children under the sponsorship of Feeding Our Future.

Alishire submitted fraudulent claims for reimbursement on behalf of Lake Street Kitchen. These fraudulent claims included falsified invoices purporting to document the purchase of food that was not actually purchased. Those claims also included falsified attendance rosters purporting to document the names of children who received meals. In total, Lake Street Kitchen claimed to have served over 70,000 meals between December 2020 through April 2021. In reality, Lake Street Kitchen served a fraction of the meal amounts claimed. For its claims, Lake Street Kitchen

received significant funds from the Federal Child Nutrition Program that passed through Feeding our Future, its sponsor.

Adan was unaware of the day-to-day actions of Alishire and his co-conspirators. Nevertheless, Adan was aware of the funds Lake Street Kitchen received, and took a profit split from those funds. Adan was further aware of the high probability that these funds far exceed the amounts that realistically could have been served from this location, and deliberately avoided learning the truth about the source of the funds that Lake Street Kitchen obtained. He was thus aware of the very strong possibility that some portion of the money received as reimbursements received by Lake Street Kitchen, which represented federal program dollars, were obtained by fraud, since Lake Street Kitchen could not have served the amount of people it claimed to. Despite this awareness, Adan nevertheless received profits from Lake Street Kitchen, and continued to allow it to operate in a building he owned.

While he did not know the exact nature of Alishire's scheme or its full scale, and deliberately avoided learning how the scheme was being carried out, Adan was aware of the very high probability that not more than $1,000 in funds that he received from Lake Street Kitchen represented fraud proceeds.

3.   **Waiver of Indictment.** The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

4.   **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of

3

this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

5. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7. **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to his immigration status, including removal or deportation. The defendant understands that no one, including his attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

8. **Statutory Penalties.** The defendant understands that Count One of the Information (theft of government property, in violation of 18 U.S.C. § 641) is a misdemeanor offense that carries the following statutory penalties:

   a.  a maximum of 1 year in prison;

   b.  a supervised release term of not more than 1 year;

   c.  a maximum fine of $100,000;

   d.  restitution as agreed to by the parties in this agreement; and

   e.  a mandatory special assessment of $25.

9. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the

appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

    a.    <u>Base Offense Level</u>. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

    b.    <u>Specific Offense Characteristics</u>. The parties agree that pursuant to Guidelines § 2B1.1(b)(12) the offense level should be increased by 2 levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits).

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that no Chapter 3 adjustments apply.

    d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Whether this reduction will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

    e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands

    that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  f. <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

  g. <u>Guidelines Range</u>. If the adjusted offense level is 5, and the criminal history category is I, the Sentencing Guidelines range is 0 to 6 months of imprisonment.

  h. <u>Fine Range</u>. If the adjusted offense level is 5, the Sentencing Guidelines fine range is $500 to $9,500. U.S.S.G. § 5E1.2(c)(3).

10. **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

11. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the

parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

12. **Agreements as to Sentencing Recommendation.** The parties agree to recommend a sentence of probation. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

13. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $25 for each Class A misdemeanor count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

14. **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Information. The parties agree that the amount of restitution is $1,000.

15. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning,

and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

16. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. The parties acknowledge and agree, however, that in the event a retroactively applicable change in the law is adjudicated by the Supreme Court, enacted by Congress, and/or adopted by the United States Sentencing Commission, nothing in this plea agreement will preclude the defendant from pursuing any applicable remedy to modify the sentence.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

17. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

18. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

JOSEPH H. THOMPSON
Acting United States Attorney

Date: August 28, 2025

BY: HARRY M. JACOBS
DANIEL W. BOBIER
MELINDA A. WILLIAMS
Assistant United States Attorneys

Date: 08-28-2025

KHADAR JIGRE ADAN
Defendant

Date: 8-28-25

WILLIAM MAUZY
WILLIAM DOOLING
Counsel for Defendant

10